UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

MAY 3 1 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-251-GWU

MARY MIDDLETON,                                              PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Supplemental Security Income (SSI).  The appeal is

currently before the Court on cross-motions for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled.  If no, proceed to Step 2.
      See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical
      or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
      claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any
      impairment(s) significantly limiting the claimant's physical or
      mental ability to do basic work activities?  If yes, proceed to
      Step 4.  If no, the claimant is not disabled.  See 20 C.F.R.
      404.1520(c), 404.1521, 416.920(c), 461.921.

1

Middleton

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Middleton

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

Middleton

pain arising from the condition; or (2) whether the objectively
established medical condition is of such a severity that it can
reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be
remedied by treatment. The Sixth Circuit has held that such an impairment will not
serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health
and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same
result does not follow if the record is devoid of any evidence that the plaintiff would
have regained his residual capacity for work if he had followed his doctor's
instructions to do something or if the instructions were merely recommendations.
Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,
1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before
it, despite the plaintiff's claims that he was unable to afford extensive medical work-
ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.
1987). Further, a failure to seek treatment for a period of time may be a factor to be
considered against the plaintiff, Hale v. Secretary of Health and Human Services,
816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford
or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242
(6th Cir. 1990).

4

Middleton

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

physical and mental impairments.  <u>Varley v. Secretary of Health and Human
Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Mary Middleton, was found by an Administrative Law Judge
(ALJ) to have "severe" impairments consisting of chronic obstructive pulmonary
disease, complaints of chest pain, a history of hypertension, complaints of chronic
back pain, degenerative disc disease, and panic disorder not associated with
agoraphobia. (Tr. 20).  Nevertheless, based in part on the testimony of a vocational
expert (VE), the ALJ determined that Mrs. Middleton retained the residual functional
capacity to perform a significant number of jobs existing in the economy and,
therefore, was not entitled to benefits. (Tr. 22-5).  The Appeals Council declined to
review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of
the plaintiff's age, education, and work experience could perform any jobs if she
were limited to "light" level exertion, and also had the following non-exertional
impairments. (Tr. 259).  She: (1) could not climb ladders, ropes, or scaffolds; (2)
could occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl; (3) needed
to avoid concentrated exposure to heat or cold, fumes, odors, dust, gases, or poor
ventilation; and (4) required work that involved only routine, simple, non-detailed
tasks where public and co-worker contact was casual and infrequent, where
supervision was direct and non-confrontational, and where changes in the workplace

were infrequent and gradually introduced. (Id.). The VE responded that there were

jobs that such a person could perform, and proceeded to give the numbers in which

they existed in the state and national economies. (Tr. 259-60).

     On appeal, this Court must determine whether the administrative decision is

supported by substantial evidence. The plaintiff had filed a prior application for SSI

on December 8, 1998, which was denied by an ALJ in a decision dated October 28,

1999 and later upheld by this Court. Middleton v. Barnhart, London Civil Action No.

01-473 (E.D. Ky. November 15, 2002). The ALJ in the present case declined to

reopen the prior application and found that there had been no relevant change in the

plaintiff's medical conditions since October 28, 1999. (Tr. 16-17). The prior

administrative functional capacity finding was identical to the current finding, apart

from the addition of some mental restrictions as given in the hypothetical question.[1]

     The plaintiff's primary allegation of disability concerned shortness of breath.

She submitted office notes from her treating family physician, Dr. Robert G. Drake,

Jr., reflecting treatment at regular intervals between October, 1999 and August,

2004, with the physician prescribing numerous medications for breathing problems,

---

[1] In connection with the present application, the plaintiff was consultatively examined by Psychologist Gary Maryman, who diagnosed a "panic disorder not associated with agoraphobia," and equivocally suggested some limitations of work activity. (Tr. 128-31). A state agency psychologist who reviewed the record, however, concluded that the plaintiff did not have a "severe" mental impairment. (Tr. 154). The ALJ's hypothetical question appears to accommodate the equivocal remarks made by Dr. Maryman, and the plaintiff has not raised any issue regarding mental restrictions on appeal.

Middleton

as well as Lorcet Plus for pain and Valium. (Tr. 208-35). Dr. Drake obtained a number of objective studies, including a chest x-ray in January, 2001 which showed chronic obstructive airways disease, although a follow-up chest x-ray in July, 2002 was read as showing no abnormalities (Tr. 171, 192), a lumbosacral spine x-ray in May, 2001 which was essentially normal apart from degenerative changes (Tr. 174), a bone density scan in October, 2001 showing "mild" osteopenia (Tr. 173), and an MRI of the lumbosacral spine in November, 2002 which showed minimal degenerative loss of signal at the L4-L5 area and the suggestion in one axial image of a protrusion at the L1-2 level (Tr. 172). Dr. Drake summarized the patient's condition in January, 2003 as including asthmatic bronchitis "due to heavy smoking," and history of hypertension with normal testing by a cardiologist in 2002, and duodenitis from an upper GI test in June, 2002. (Tr. 118). She had been referred to a pulmonologist, Dr. John C. Rodrigues, for severe chronic obstructive pulmonary disease with dyspnea on minimal exertion, and Dr. Drake noted that Dr. Rodrigues had declared her to be disabled secondary to lung disease. (Id.).[2] An MRI of the

---

[2]The plaintiff's last visit to Dr. Rodrigues was in 1999, at which time she was continuing to smoke three cigarettes a day, and the assessment was of chronic severe asthmatic bronchitis and "continued tobacco abuse." (Tr. 176). An undated letter from Dr. Rodrigues, which was apparently submitted in connection with the prior application and considered by the Court in its November 15, 2002 Memorandum Opinion, indicates that the plaintiff was disabled secondary to her lung disease (Tr. 177), but the office notes indicate that the plaintiff had been repeatedly counseled about the urgency of smoking cessation. (Tr. 176, 180,182). As the Court noted in its prior Memorandum Opinion, the office notes suggest that the continuation of smoking had exacerbated the pulmonary problems which were the source of this disability opinion.

back had shown a "minimal" degenerative changes, but bronchitis was the primary reason she sought treatment from Dr. Drake. (Tr. 118-19). Dr. Drake also declared his patient to be "permanently disabled" in a form dated May 21, 2004 (Tr. 210), and submitted a functional capacity form with no clear date indicating that she could only occasionally lift 10 pounds, could never perform any postural activities or use her hands or feet, and would have total environmental restrictions (Tr. 206).

Dr. Drake had referred his patient to a neurosurgeon, Dr. Magdi El-Kalliny, for her complaints of back pain. (Tr. 202). Dr. El-Kalliny interpreted the MRI of the lumbosacral spine as showing only mild degenerative changes at the L4-L5 level, and concluded that the small protrusion at L1-L2 did not explain her region of pain. (Id.). His examination showed normal motor strength in all extremities and no neurological abnormalities. (Tr. 203). He did not recommend surgery and did not plan a follow-up, and referred the plaintiff to another physician for epidural steroid injections. (Tr. 202). He recommended "conservative management," and did not list any functional restrictions. (Tr. 204).

The ALJ rejected Dr. Drake's opinion because it was inconsistent with objective testing and the opinion of other examining physicians, and because the majority of office visits had been for medication refills and not "actual treatment." (Tr. 19). The ALJ also noted that the plaintiff continued to smoke against medical advice.

10

Middleton

The other medical evidence includes a consultative evaluation by Dr. Jeff Reichard on February 9, 2003. The plaintiff complained of coughing, lower extremity swelling, and severe shortness of breath, as well as severe back pain, but Dr. Reichard found her to be able to ambulate with a normal gait and be comfortable in both the sitting and supine positions. (Tr. 120-1). She had inspiratory and expiratory wheezes, but her heart sounds were normal. (Tr. 121). She was also able to squat and walk on her heels and toes and had only a slight difficulty bending forward 80 degrees at the waist. (Tr. 121-2). The neurological examination was normal. Dr. Reichard concluded that the plaintiff's physical examination with respect to her back was "very benign," and although she did have findings relating to shortness of breath, she appeared to be able to perform at least a mild amount of ambulating, standing, bending, stooping, and lifting "heavy" objects in the workplace. (Tr. 123). A pulmonary function test conducted by Dr. Martin Fritzhand the same day showed an FEV 1 only 46 percent of the predicted level, rising to 54 percent after the administration of bronchodilators. (Tr. 125). The results were consistent with a moderately severe restriction and a mild obstruction. (Tr. 126).

State agency physicians who reviewed the evidence concluded that the plaintiff had the functional capacity to perform "light" level exertion, with the additional non-exertional restrictions found by the ALJ and given in the hypothetical question, supra. (Tr. 132-9, 144-51).

11

Middleton

On appeal, the plaintiff focuses her argument on the ALJ's failure to cite to a disability letter written by Dr. Drake and submitted to the Appeals Council. (Tr. 249). Clearly, the ALJ could not have discussed this letter, since it was not submitted for his review.  The plaintiff does argues that it was error to reject Dr. Drake's opinion of disability, which was given in documentation submitted to the ALJ, in view of the large number of office visits.  However, whatever may be said about the ALJ's opinion that the plaintiff's office visits were for refills and not for "actual treatment," he did give valid grounds for discounting the physician's opinion given the plaintiff's continuation of smoking against medical advice, the relatively benign findings resulting from other objective testing, the opinion of Dr. Reichard, and the opinion of the state agency reviewing sources.

The decision will be affirmed.

This the ___31___ day of May, 2006.

G. WIX UNTHANK
SENIOR JUDGE

12